UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
JOHN PARENT, individually and as natural
parent of Child "A" and Child "B," and on behalf
of parents similarly situated, also known as
Leon R. Koziol,

                              Plaintiffs,

         -v-                                      6:09-CV-233 (LEAD)

STATE OF NEW YORK; JONATHAN LIPPMAN,
individually and as Chief Administrative Officer of
the New York Unified Court System; UNIFIED
COURT SYSTEM OF THE STATE OF NEW YORK;
JOHN W. GROW, individually and as State Court
Judge; CHARLES C. MERRELL, individually and as
Family Court Judge; GEORGE S. GETMAN,
individually and as Support Magistrate; MICHAEL
DALEY, individually and as Acting Judge for the
State of New York; JUSTICES OF THE
APPELLATE DIVISION, FOURTH DEPARTMENT;
FIFTH JUDICIAL DISTRICT GRIEVANCE
COMMITTEE; MARY GASPARINI, individually and
as investigator/attorney for the Grievance
Committee; SHERYL CRANKSHAW, individually
and as investigator for the Grievance Committee;
KATHLEEN SEBELIUS, Secretary of Health and
Human Services for the United States; DAVID J.
SWARTS, individually and as Commissioner of
Motor Vehicles for the State of New York; BRIAN J.
WING, individually and as Commissioner of the
Office of Temporary and Disability Assistance for the
State of New York; LUCILLE SOLDATO, individually
and as Commissioner of the Oneida County Support
Collection Unit; DARLENE CHUDYK, individually
and as "Investigator" for Oneida County; JANE
DOE, individually and as "Custodial Parent" for the
State of New York; KEITH EISENHUT; WILLIAM
KOSLOSKY, individually and as "Attorney for the
Child" for the State of New York; and MARTHA
WALSH-HOOD, individually and as Acting State
Court Judge,

                              Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
LEON R. KOZIOL, individually and as natural
parent of Child "A" and Child "B," and on behalf
of parents similarly situated,

                                        Plaintiffs,

          -v-                                          6:10-CV-1361 (MEMBER)

JONATHAN LIPPMAN, individually and as Chief
Administrative Officer of the New York Unified Court
System; NEW YORK UNIFIED COURT SYSTEM;
STATE OF NEW YORK; JOHN W. GROW,
individually and as State Supreme Court Judge;
CHARLES MERRELL, individually and as Family
Court Judge; GEORGE S. GETMAN, individually
and as Support Magistrate; MICHAEL DALEY,
individually and as Acting Judge; JUSTICES OF
THE APPELLATE DIVISION THIRD/FOURTH
DEPARTMENTS; FIFTH JUDICIAL DISTRICT
GRIEVANCE COMMITTEE; GREGORY HUETHER,
individually and as Chief Counsel/Complainant of
the Fifth Judicial District; MARY GASPARINI,
individually and as investigator/attorney for the Fifth
District; KATHLEEN SEBELIUS, U.S. Secretary of
Health and Human Services; BRIAN J. WING,
individually and as Commissioner of the Office of
Temporary and Disability Assistance; DAVID J.
SWARTS, as Commissioner of Motor Vehicles;
LUCILLE SOLDATO, individually and as
Commissioner of the Oneida County Department of
Social Services; DARLENE CHUDYK, individually
and as "Investigator" for Oneida County; KELLY
HAWSE-KOZIOL, individually and as "Custodial
Parent" for the State of New York; KEITH
EISENHUT; WILLIAM KOSLOSKY, individually and
as the state's "Attorney for the Child"; MARTHA
WALSH-HOOD, individually and as Acting Judge; C.
DUNCAN KERR, individually and as Deputy Tax
Commissioner; DONNA COSTELLO, CHARLOTTE
KIEHLE and unknown enforcement agents of the
state, County of Oneida and New Hartford Police;
COUNTY OF ONEIDA; and TOWN OF NEW  HARTFORD,

                                        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                    OF COUNSEL:

JOHN PARENT, Plaintiff Pro se
LEON R. KOZIOL, Plaintiff Pro se
1518 Genesee Street
Utica, NY 13502

HON. ERIC T. SCHNEIDERMAN                       CHRISTOPHER W. HALL, ESQ.
Attorney General for the State of New York      MEGAN M. BROWN, ESQ.
Attorneys for Defendants State of New York,     Ass't Attorneys General
    Lippman, Unified Court System, Grow,
    Merrell, Getman, Swarts, Wing, Daley,
    Justices of the Appellate Division Fourth
    Department, Fifth Judicial District Grievance
    Committee, Huether, Gasparini, Crankshaw,
    and Walsh-Hood
The Capitol
Albany, NY 12224

GORMAN, WASZKIEWICZ, GORMAN &                   BARTLE J. GORMAN, ESQ.
    SCHMITT
Attorneys for Defendants Soldato, Chudyk,
    and County of Oneida
1508 Genesee Street
Utica, NY 13502

SUGARMAN LAW FIRM                               PAUL V. MULLIN, ESQ.
Attorneys for Defendant
    Town of New Hartford
211 West Jefferson Street
Syracuse, NY 13202

COSTELLO, COONEY & FEARON, PLLC                 JENNIFER L. NUHFER, ESQ.
Attorneys for Defendants Eisenhut and          PAUL G. FERRARA, ESQ.
    Koslosky                                    CHRISTOPHER G. TODD, ESQ.
205 South Salina Street
Syracuse, NY 13202

HON. RICHARD S. HARTUNIAN                    CHARLES E. ROBERTS, ESQ.
United States Attorney                       Ass't United States Attorney
Northern District of New York
Attorneys for Defendant Sebelius
100 South Clinton Street
P.O. Box 7198
Syracuse, NY  13261


DAVID N. HURD
United States District Judge

## **TABLE OF CONTENTS**

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

LEGAL STANDARDS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10
    Motion to Dismiss. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10
    Motion for Summary Judgment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

ANALYSIS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12
    New Hartford. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12
        Federal Claims under §§ 1983, 1985, 1986. . . . . . . . . . . . . . . . . . . . . . . . .  12
        State Law Trespass Claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14
    State Defendants. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14
        Personal Involvement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15
        Eleventh Amendment Immunity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16
        Judicial and Quasi-Judicial Immunity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18
                Judge Lippman. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20
                Judge Grow. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21
                Judge Merrell. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22
                Support Magistrate Getman. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23
                Judge Daley. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23
                Judge Walsh-Hood. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24
                Gasparini, Huether, and Crankshaw.. . . . . . . . . . . . . . . . . . . . . . . . . . .  26
    County Defendants. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  27
        County of Oneida. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  27
        Soldato and Chudyk. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  28
    Attorney Defendants. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  31
        Federal Claims under § 1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  31
        Conspiracy Claims under § 1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  33
        State Law Defamation Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  36
        State Law Legal Malpractice Claims—Koslosky. . . . . . . . . . . . . . . . . . . . .  38
        Remaining State Law Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  40
    Other Issues. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  40
        Sebelius. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  40
        Hawse-Koziol. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  41
        Costello, Kiehle, and Kerr. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  41
        Remaining State Law Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  43
        Plaintiff's Cross-Motions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  43

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  43

**MEMORANDUM-DECISION and ORDER**

## I.  INTRODUCTION

Plaintiff Leon R. Koziol[1] ("plaintiff" or "Koziol"), individually and as natural parent of Child "A" and Child "B," and on behalf of parents similarly situated, brings these actions asserting a total of forty-two causes of action under the United States Constitution and state law.

Plaintiff filed the initial complaint in Civil Action No. 6:09-CV-233 ("lead case") on February 26, 2009.  Dkt No. 1.  He later served an amended complaint and second amended complaint ("lead complaint").  Dkt. Nos. 7, 13.  Defendants filed various motions to dismiss in the lead case.  Dkt. Nos. 19, 22, 33, 38.  Oral argument was heard regarding those motions on September 16, 2010, in Utica, New York.  Decision was reserved.

On November 10, 2010, plaintiff filed Civil Action No. 6:10-CV-1361 ("member  case").[2] The member case was reassigned to the undersigned on November 12, 2010, when it was discovered that the lead case was pending and related.  A comparison of the two cases revealed they involve common questions of law and fact.  On November 23, 2010, the two cases were consolidated and the initial action designated as the lead case.  Dkt. No. 54.  The pending motions were dismissed without prejudice to renew to incorporate arguments with regard to the new causes of action in the member case.

---

[1]  The named plaintiff in the lead complaint is "John Parent, individually and as natural parent of Child 'A' and Child 'B,' and on behalf of parents similarly situated also known as Leon R. Koziol." Lead Compl., Dkt. No. 13.

[2]  The complaint in the member case will be referenced as "member complaint."

Following consolidation, defendant Town of New Hartford ("New Hartford") moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule __").  Dkt. No. 60. Plaintiff opposed.

Defendants the State of New York ("New York"); Chief Judge of the State of New York Jonathan Lippman ("Judge Lippman"); the Unified Court System of the State of New York ("UCS"); retired New York State Supreme Court Judge John W. Grow ("Judge Grow"); Lewis County Family Court Judge Charles C. Merrell ("Judge Merrell"); Herkimer County Family Court Support Magistrate George S. Getman ("Getman"); New York State Commissioner of Motor Vehicles David J. Swarts ("Swarts"); New York State Commissioner of the Office of Temporary and Disability Assistance Brian J. Wing ("Wing"); New York State Deputy Tax Commissioner C. Duncan Kerr ("Kerr"); Herkimer County Supreme Court Judge Michael E. Daley ("Judge Daley"); the Justices of the Appellate Division, Third Department ("Third Department"); the Justices of the Appellate Division, Fourth Department ("Fourth Department"); the Fifth Judicial District Grievance Committee ("Grievance Committee"); Fifth Judicial District Chief Counsel/Complainant Gregory Huether ("Huether"); Grievance Committee Investigator/Attorney Mary Gasparini ("Gasparini"); Grievance Committee Investigator Sheryl Crankshaw ("Crankshaw"); and Fifth Judicial District Family Court Supervising Judge Martha Walsh-Hood ("Judge Walsh-Hood") (collectively "State defendants") also moved to dismiss pursuant to Rule 12(b)(6).  Dkt. No. 68.  Plaintiff opposed and the State defendants replied.

The Commissioner of the Oneida County Department of Social Services Lucille Soldato ("Soldato"); Oneida County Investigator Darlene Chudyk ("Chudyk"); and the County of

Oneida ("County") (collectively "County defendants") moved to dismiss pursuant to Rule 12(b)(6).  Dkt. No. 70.  Plaintiff opposed and the County defendants replied.

Defendants Keith Eisenhut ("Eisenhut") and William Koslosky[3] ("Koslosky") (collectively "attorney defendants") separately moved for summary judgment pursuant to Rule 56.  Dkt. Nos. 84, 89.  Plaintiff opposed both motions and the attorney defendants replied.

Plaintiff cross-moved for a preliminary injunction, full or partial summary judgment, and a default judgment regarding non-appearing defendants.  Dkt. No. 72.  The County, State, and attorney defendants opposed.  Plaintiff replied.  All motions were considered on their submissions without oral argument.

No appearance has been entered nor motions made on behalf of defendant Kelly Hawse-Koziol[4] ("Hawse-Koziol" or "ex-wife").  Secretary of Health and Human Services for the United States Kathleen Sebelius ("Sebelius") appeared in the action but no motions have been made on her behalf.[5]  Similarly, no appearances have been entered nor motions made on behalf of defendants New York State Tax Compliance Agent Donna Costello ("Costello"), Charlotte Kiehle ("Kiehle"), and unknown enforcement agents.

## II. BACKGROUND

The facts upon which these actions are based are summarized briefly below.  Further details will be set forth as necessary in the analysis of each claim.  Facts set forth in the complaint will be taken as true for the purpose of motions to dismiss.  For summary judgment

---

[3]  Plaintiff designates Koslosky as "attorney for the child for the State of New York."

[4]  She is named as Jane Doe in the lead case and as Kelly Hawse-Koziol in the member case. Plaintiff designates her as "custodial parent for the State of New York" in both cases.

[5]  Sebelius filed a motion to dismiss on May 13, 2011.  Dkt. No. 102.  This motion is untimely as an answer was due on January 11, 2011.  Therefore, Sebelius's motion will not be considered.

motions, facts will be viewed in the light most favorable to plaintiff, with all inferences made in his favor.

Koziol, who was a duly-licensed attorney, carried on a private law practice specializing in civil rights matters.  He practiced in both state and federal court.

Plaintiff and his ex-wife had two minor daughters.  Pursuant to their private separation agreements, plaintiff and his ex-wife cooperated with each other as to the custody and support of the two daughters.  After eighteen months of legal separation and compliance with their separation agreements, Koziol initiated a divorce action in New York state court in September 2005.

An uncontested application for a final decree of divorce was filed approximately four months after the divorce action was initiated.  In February 2006, the state court judge before whom the application was pending refused to grant the divorce without written reasons.  On October 8, 2008, a letter decision was issued by the state court denying the application based upon failure to provide net worth statements and conform to the state's child support standards law.

A custody and support contest then ensued.  Plaintiff alleges that the requirements imposed upon him by the state court pertaining to child custody and support, which altered the agreement between he and his ex-wife, constructively terminated his fathering rights.

Koziol did not make the child support payments as required by the state court, arguing that the designation of his ex-wife as custodial parent and the court-ordered payments violated his federal constitutional rights.  The state child support collection unit became involved, as did the attorney disciplinary committee.  Various other state and local enforcement authorities also performed investigatory functions.

Plaintiff's delinquencies in child support obligations eventually resulted in the suspension of his driver's license, his license to practice law, and his passport privileges. Without a license to practice law, Koziol had to close his legal practice.

Over the last five years, over twenty-one state court judges have been assigned to hear plaintiff's child custody and support issues.  A minimum of fifty orders in relation to those matters have been issued.  Custody, support, and visitation issues remain unresolved although plaintiff is currently making a monthly payment toward child support and arrears.

## III.  LEGAL STANDARDS

### A.  Motion to Dismiss

When deciding a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff's factual allegations must be accepted as true and all reasonable inferences must be drawn in favor of the plaintiff to asses whether a plausible claim for relief has been stated.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-61, 127 S. Ct. 1955, 1964-67 (2007); Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1953 (2008) (holding that the pleading rule set forth in Twombly applies in "all civil actions").  The factual allegations must be sufficient "to raise a right to relief above the speculative level," crossing the line from "possibility" to "probability."  Twombly, 550 U.S. at 557, 127 S. Ct. at 1966.  Additionally, "a formulaic recitation of the elements of a cause of action will not do."  Id. at 555, 127 S. Ct. at 1965.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S. Ct. at 1965).

Thus, in reviewing the sufficiency of the pleading, a court first may identify legal conclusions that "are not entitled to the assumption of truth."  Id. at 1950.  The court should

then "assume [the] veracity" of "well-pleaded factual allegations . . . and determine whether they plausibly give rise to an entitlement to relief."  Id.

### B.  Motion for Summary Judgment

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986). The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact.  Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552 (1986).  Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986).

When the moving party has met the burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Id. at 586, 106 S. Ct. at 1356.  At that point, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56; Liberty Lobby, Inc., 477 U.S. at 250, 106 S. Ct. at 2511; Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356.  To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmovant.  Liberty Lobby, Inc., 477 U.S. at 248-49, 106 S. Ct. at 2510; Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356.

## IV. ANALYSIS

### A. New Hartford

Plaintiff alleges causes of action under the United States Constitution, pursuant to 42 U.S.C. §§ 1983, 1985, and 1986 against New Hartford, as well as a state law trespass cause of action.

### 1. Federal Claims under §§ 1983, 1985, 1986

A plaintiff may bring an action for redress of a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by a person acting under color of state law. 42 U.S.C. § 1983 (2006); L.A. Cnty., Cal. v. Humphries, __ U.S. __, 131 S. Ct. 447, 452 (2010). Municipalities, considered a "person" for this purpose, may "'be sued directly under § 1983 for monetary, declaratory, or injunctive relief'" where the allegation is that a policy or custom[6] of the municipality results in a deprivation of constitutional rights. Humphries, 131 S. Ct. at 452 (quoting Monell, 436 U.S. at 690-91, 98 S. Ct. at 2035-36). However, a municipality cannot be sued "'solely because it employed a tortfeasor.'" Id. (quoting Monell, 436 U.S. at 691, 98 S. Ct. at 2036).

Section 1985 provides a cause of action to one who is "injured by conspiracies formed 'for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.'" United Bhd. of Carpenters, Local 610 v. Scott, 463 U.S. 825, 827, 103 S. Ct. 3352, 3355 (1983)

---

[6]   As the Supreme Court reiterated, "policy or custom" is used as a shorthand to reference a "lengthy list of types of municipal action" for which liability can ensue. Humphries, 131 S. Ct. at 452. The list includes an action that "'implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. ... [They can also be sued for] deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels.'" Id. (alteration in original) (quoting Monell v. N.Y.C. Dep't of Soc. Servs., 436 U.S. 658, 690-91, 98 S. Ct. 2018, 2035-36 (1978)).

(quoting 42 U.S.C. § 1985(3)).  In addition to establishing that there was a conspiracy, an act in furtherance of the conspiracy, and injury caused by the conspiracy, "there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."  Id. at 830, 835, 103 S. Ct. at 3357, 3359.  Fathers who are divorcing, are divorced, or are engaged in custody disputes are not members of a class subject to invidious discrimination; therefore, a cause of action under § 1985 will not lie.  Buchanan v. Buchanan, 42 F.3d 1398 (9th Cir. 1994) (Table; unpublished opinion found at 1994 WL 680992, at *4); Humphrey v. Court of Common Pleas, 640 F. Supp. 1239, 1243 (M.D. Pa. 1986); see also  Pollack v. Nash, 58 F. Supp. 2d 294, 305 (S.D.N.Y. 1999) (dismissing § 1985 claim because "those in a family custody dispute do not form a protected class").

Further, a valid § 1985 claim is a prerequisite to a claim brought under § 1986.  Brown v. City of Oneonta, N.Y., 221 F.3d 329, 341 (2d Cir. 2000).  Thus, if the underlying § 1985 cause of action is dismissed, the § 1986 cause of action must also be dismissed.  Id.

On October 19, 2010, a New York state court order, warrant, and tax levy were executed at plaintiff's residence by state officials.  Unnamed New Hartford police officers were present at his residence during the execution.  According to plaintiff, the New Hartford police officers were at his home arbitrarily and without cause, and in such a manner as to provoke controversy.  There is no allegation in Koziol's complaint that New Hartford had a policy, custom, or practice of violating constitutional rights, or of retaliating for the exercise of constitutional rights.  Moreover, there are no facts alleged from which an inference could plausibly be drawn that any such policy, custom, or practice existed.  Any right to relief based upon facts alleged pertaining to New Hartford would be purely speculative.  Thus, all § 1983 claims against New Hartford based upon policy, custom, or practice will be dismissed.

Moreover, Koziol cannot prevail on a claim under § 1985.  His attempt at analogizing the plight of non-custodial parents ordered by a state court to make child support payments with that of African-Americans targeted for invidious discrimination by the Ku Klux Klan deserves no more attention than patent denial.  Plaintiff does not fall within a class subject to invidious discrimination deserving of protection under § 1985.  Because Koziol's § 1985 claim fails, his § 1986 claim must also be dismissed.[7]

### 2.  **State Law Trespass Claim**

 A timely-filed notice of claim is a prerequisite to a tort action against a municipality. N.Y. Gen. Mun. L. § 50-i(1) (McKinney Supp. 2011).  The complaint must contain allegations that the notice of claim was filed at least thirty days prior and payment has not been made to satisfy the claim.  Id.

Plaintiff does not allege in his complaint that he filed a notice of claim with New Hartford and that more than thirty days passed without resolution of the claim prior to filing the member case.  Further, he does not argue in opposition to New Hartford's motion to dismiss that he has complied with the notice of claim requirements.  Therefore, the state law trespass claim against New Hartford will be dismissed.

### B.  **State Defendants**

The State defendants moved to dismiss, asserting:  (1) Swarts, Wing, and Kerr were not personally involved in the conduct that allegedly violated plaintiff's rights; (2) all State

---

[7] To the extent plaintiff asserts § 1985 and § 1986 claims against other defendants, those claims are dismissed for the same reasons discussed above.

defendants are entitled to Eleventh Amendment immunity; and (3) the judicial defendants[8] are entitled to judicial immunity.

### 1. **Personal Involvement**

Swarts, Wing, and Kerr assert they must be dismissed for lack of personal involvement. Plaintiff fails to respond to this argument.  This lack of a counter argument lightens defendants' burden so they need only show their motion has "facial merit."  Cont'l Ins. Co. v. Coyne Int'l Enter. Corp., 700 F. Supp. 2d 207, 213 & n.6 (N.D.N.Y. 2010) (Suddaby, J.).

The personal involvement of defendants is an essential element of a § 1983 claim. Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994).  "A plaintiff must allege a tangible connection between the acts of a defendant and the injuries suffered."  Bass v. Jackson, 790 F.2d 260, 263 (2d Cir. 1986).  There is no respondeat superior liability under § 1983, and defendants may not be held liable for constitutional violations merely because they hold a high position of authority.  Richardson v. Goord, 347 F.3d 431, 435 (2d Cir. 2003); Wright, 21 F.3d at 501.

The only mention of Swarts in the lead complaint is an allegation that, as New York State Commissioner of Motor Vehicles, he was ultimately responsible for executing "belated notices for a suspension of driving privileges."  Lead Compl. ¶ 82.  While Swarts is listed as a defendant in the member complaint, there are no factual allegations made against him.

Wing is mentioned only in the "Parties" section of the lead complaint, where it is alleged that he "exercised authority over the implementation of Title IV-D as it relates to plaintiffs." Id. ¶ 20.  In the member complaint, plaintiff alleges Wing "exceeded his scope by targeting

---

[8]  The judicial defendants include Judges Lippman, Grow, Merrell, Daley, and Walsh-Hood; Support Magistrate Getman; and Grievance Committee members Gasparini, Huether, and Crankshaw.

plaintiffs" and "sponsored an unauthorized, fraudulent and stigmatizing petition for support violations" that led to the suspension of plaintiff's driving privileges.  Member Compl. ¶¶ 20, 78.

These conclusory allegations are insufficient to establish the personal involvement of Swarts and Wing.  Plaintiff does not allege any facts to even suggest a tangible connection between these two defendants and the conduct that actually violated his rights.  Swarts and Wing cannot be held liable solely by virtue of their positions of authority.  Therefore, all claims against Swarts and Wing will be dismissed.

Kerr is not named anywhere in the lead complaint.  In the "Parties" section of the member complaint plaintiff alleges Kerr "directed and participated in an unlawful seizure of assets from [his] homestead on October 19, 2010."  Id. ¶ 28.  This allegation is sufficient to establish Kerr's personal involvement as it suggests she was physically present at Koziol's home and took part in the allegedly unlawful seizure outlined in the twelfth cause of action.

Accordingly, defendants' motion to dismiss for lack of personal involvement will be granted as to Swarts and Wing but denied as to Kerr.

## 2.  Eleventh Amendment Immunity

The State defendants argue that New York, its agencies, and all individual State defendants in their official capacities are entitled to immunity under the Eleventh Amendment.

It is well-established that the Eleventh Amendment bars actions against states and state agencies.  Gollomp v. Spitzer, 568 F.3d 355, 365-66 (2d Cir. 2009).  Eleventh Amendment immunity precludes a plaintiff from seeking any relief against states and state agencies—including monetary and injunctive relief.  Cory v. White, 457 U.S. 85, 90-91, 102

S. Ct. 2325, 2329 (1982).  This immunity "extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of the state."  Gollomp, 568 F.3d at 366 (internal quotation omitted).  Specifically, UCS and appellate divisions have been deemed arms of New York.  Id. at 368 (UCS); Zuckerman v. Appellate Div., 421 F.2d 625, 626 (2d Cir. 1970) (appellate divisions).  It follows that the Grievance Committee is an arm of New York as it is tasked, by law, with investigating reports of attorney misconduct on behalf of UCS.  See N.Y. Comp. Codes R. & Regs. tit. 22, § 603.4 (2011); Thaler v. Casella, 960 F. Supp. 691, 700-01 (S.D.N.Y. 1997) (holding that a grievance committee is entitled to Eleventh Amendment immunity since it is a judicial arm of New York).

The Eleventh Amendment also bars claims for money damages against state officials acting in their official capacities.  Kentucky v. Graham, 473 U.S. 159, 167-68, 105 S. Ct. 3099, 3106 (1985).  However, suits against state officials in their official capacities for prospective injunctive relief to stop ongoing violations of federal law are permitted.  Ex parte Young, 209 U.S. 123, 159-60, 28 S. Ct. 441, 453-54 (1908).

Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit.  Gollomp, 568 F.3d at 365-66.  It is well-settled that Congress did not abrogate states' immunity through § 1983.  Quern v. Jordan, 440 U.S. 332, 343-45, 99 S. Ct. 1139, 1146-47 (1979); Dube v. State Univ. of N.Y., 900 F.2d 587, 594 (2d Cir. 1990).  While a state may be required to waive its immunity in order to receive federal funds, Congress must explicitly require such a waiver in statute, and the state must "unequivocally" consent to suit in federal court.  Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 680, 686, 119 S. Ct. 2219, 2228, 2231 (1999).  Indeed, "[s]tate participation in a federal program . . . does not in itself constitute

waiver; rather waiver will be found only if stated in 'express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.'" Yorktown Med. Lab., Inc. v. Perales, 948 F.2d 84, 88 (2d Cir. 1991) (quoting Fla. Dep't of Health & Rehabilitative Servs. v. Fla. Nursing Home Ass'n, 450 U.S. 147, 150, 101 S. Ct. 1032, 1034 (1981)).

Plaintiff argues that New York and its agencies have effectively waived immunity by using federal law, namely Title IV-D, and federal courts to enforce child support collection. Plaintiff offers no case law supporting his argument that a state waives its sovereign immunity by fulfilling its responsibilities under Title IV-D. Moreover, Congress did not explicitly require states to waive immunity under Title IV-D. See 42 U.S.C. § 659(a) (2006); Jenkins v. Massinga, 592 F. Supp. 480, 494 n.12 (D. Md. 1984). Plaintiff fails to identify any express language in state or federal law by which the State defendants have waived sovereign immunity.

Accordingly, New York, UCS, Third Department, Fourth Department, and Grievance Committee are entitled to Eleventh Amendment immunity, and all claims against them will be dismissed. All claims for monetary damages against the remaining individual State defendants in their official capacities will also be dismissed.

### 3. **Judicial and Quasi-Judicial Immunity**

The judicial defendants argue that they are entitled to judicial immunity from suit.

It is well-established that judges enjoy "absolute immunity from suits for money damages for their judicial actions." Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir. 2009). Moreover, § 1983 provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless

a declaratory decree was violated or declaratory relief was unavailable."  42 U.S.C. § 1983;
see also Montero v. Travis, 171 F.3d 757, 761 (2d Cir. 1999) (per curiam).  Plaintiff does not
allege that a declaratory decree was violated or that declaratory relief is unavailable.  Indeed,
plaintiff seeks a declaration that "the processes and provisions" applied to his divorce
proceedings are unconstitutional.  Lead Compl., 36, ¶ 4.  Since a declaratory decree was not
violated and declaratory relief is available, plaintiff cannot seek injunctive relief from the
judicial defendants.

Allegations of "bad faith or malice" cannot overcome judicial immunity.  Bliven, 579 F.3d
at 209.  Indeed, "the scope of the judge's jurisdiction must be construed broadly where the
issue is the immunity of the judge," and "[a] judge will not be deprived of immunity because
the action he took was in error, was done maliciously, or was in excess of his authority."
Stump v. Sparkman, 435 U.S. 349, 356, 98 S. Ct. 1099, 1105 (1978).  There are only two
ways to overcome judicial immunity.  "First, a judge is not immune from liability for nonjudicial
actions, i.e., actions not taken in the judge's judicial capacity.  Second, a judge is not immune
for actions, though judicial in nature, taken in the complete absence of all jurisdiction."
Mireles v. Waco, 502 U.S. 9, 11-12, 112 S. Ct. 286, 288 (1991).

When determining whether an action is judicial, courts are instructed "to take a
functional approach" and consider whether the action is one expected to normally be
performed by a judge.  Bliven, 579 F.3d at 210.  "[T]he Supreme Court has generally
concluded that acts arising out of, or related to, individual cases before the judge are
considered judicial in nature."  Id.  Even "informal and ex parte" proceedings that are
"otherwise within a judge's lawful jurisdiction" are considered judicial.  Forrester v. White, 484
U.S. 219, 227, 108 S. Ct. 538, 544 (1988).  Administrative actions such as terminating a

court employee, compiling general jury lists, and promulgating an attorney code of conduct do not fall within the range of judicial actions protected by absolute immunity.  Bliven, 579 F.3d at 210.

When considering if a judge acted in complete absence of jurisdiction, courts must ask (1) whether a reasonable judge would have thought jurisdiction was proper and (2) if that particular judge knew or had reason to know of such jurisdictional defect.  See Maestri v. Jutkofsky, 860 F.2d 50, 53 (2d Cir. 1988) (distinguishing between a judge who acts in excess of jurisdiction and one who acts in clear absence of all jurisdiction).

**a.  Judge Lippman**

The only allegations against Judge Lippman involve an order he issued in 2008 returning "all severed components of the father's original uncontested divorce to defendant Grow" and the assignment of judges to plaintiff's numerous cases, petitions, and hearings. Lead Compl. ¶ 69, 85; Member Compl. ¶ 80.  Plaintiff argues that these actions were administrative and therefore outside the scope of judicial immunity.[9]

The assignment of cases and issuance of consolidation orders are judicial functions normally performed by, and statutorily reserved to, Judge Lippman.  See 22 N.Y. Comp. Codes R. & Regs. tit. 22, §§ 1.1, 33.0, 80.1 (2011) (giving Chief Judge and Chief Administrator the authority to assign judges to judicial terms and parts).  Courts have deemed such functions to be judicial in nature even though they are not directly related to a particular case.  See, e.g., Martinez v. Winner, 771 F.2d 424, 434 (10th Cir. 1985) ("Although it is an 'administrative' act, in the sense that it does not concern the decision who shall win a

---

[9]  Other than causing an "unnecessary trip to another county," Koziol fails to explain how the consolidation order harmed him—much less how it violated his constitutional rights.  Lead Compl. ¶ 69.

case, the assignment of cases is still a judicial function in the sense that it directly concerns the case-deciding process . . . ."), vacated on other grounds sub nom. Tyus v. Martinez, 475 U.S. 1138, 106 S. Ct. 1787 (1986); Zahl v. Kosovsky, No. 08 Civ. 8308, 2011 WL 779784, at *9 (S.D.N.Y. Mar. 3, 2011) (alleged manipulation of the assignment system and failure to recuse in light of a conflict of interest did not strip defendant justice of judicial immunity). Accordingly, Judge Lippman is entitled to judicial immunity, and all claims against him will be dismissed.

### b. **Judge Grow**

Plaintiff makes numerous factual allegations against Judge Grow, who was the first judge assigned to the divorce petition filed by plaintiff in 2005.  Judge Grow rejected the petition for lack of appropriate financial information.  During the ensuing litigation Judge Grow issued orders granting plaintiff's motion for divorce by default, establishing child support amounts, issuing protective orders against Eisenhut and Hawse-Koziol, denying plaintiff's petitions for visitation and expanded parenting time, and refusing to suspend support payments.  Further, Judge Grow allegedly issued a letter decision on matters beyond the scope of Koziol's motion and, over his objection, signed a divorce decree bifurcating the matter between Supreme Court (support issues) and Family Court (custody issues).  Judge Grow then allegedly engaged in an ex parte conversation with Judge Merrell and Eisenhut regarding support issues, and failed to make a complete record of such conversation.

According to Koziol, after issuing a bench decision granting his ex-wife a money judgment, Judge Grow walked off the bench and ignored his plea to address his pending contempt petition.  Thereafter, plaintiff asserts, Judge Grow erred in issuing an order that did not act on several of his requests, thereby preventing an appeal of those matters.  Further,

Judge Grow granted Hawse-Koziol's request for enforcement through the child support collection unit allegedly denying plaintiff an opportunity to be heard on the matter. Finally, plaintiff contends Judge Grow improperly refused to disqualify himself, and ignored ethical issues involving Eisenhut.

All of the orders issued by Judge Grow were clearly judicial in nature and within his jurisdiction as the Supreme Court judge assigned to Koziol's divorce proceeding. Therefore, Judge Grow is entitled to judicial immunity. Even if Judge Grow acted improperly or in error, or with malice or bad faith, his entitlement to judicial immunity remains. Nor do ex parte conversations or actions taken in excess of authority by Judge Grow strip him of judicial immunity. Accordingly, all claims against Judge Grow will be dismissed.

### c. **Judge Merrell**

Plaintiff alleges that Judge Merrell was "improperly assigned" to hear a November 2006 petition regarding parenting issues. Lead Compl. ¶ 51. Thereafter, Judge Merrell allegedly engaged in ex parte conversations and, without written decision, denied plaintiff's motion for Thanksgiving visitation. According to Koziol, in November 2007 Judge Merrell improperly appointed Koslosky as attorney for the children without first affording plaintiff an opportunity to be heard. Judge Merrell recused himself in December 2007.

Plaintiff does not argue that Judge Merrell completely lacked jurisdiction. The allegation that Judge Merrell was not properly assigned apparently relates to Judge Grow's bifurcation order, which Koziol claims was improper. However, even if the order was improper, it was reasonable for Judge Merrell to believe he had jurisdiction over a case to which he was assigned. Judge Merrell's decisions regarding visitation adjustments and his appointment of attorney Koslosky are judicial actions arising from the case before him. Even assuming

Judge Merrell's failure to issue a formal written decision was contrary to statutory requirements, as plaintiff alleges, such error was made within the scope of a judicial function. Accordingly, Judge Merrell is entitled to judicial immunity, and all claims against him will be dismissed.

### d.  **Support Magistrate Getman**

Getman became involved in the Koziol divorce proceedings in November 2008. Allegedly, Getman "vowed revenge" for plaintiff's filing of a federal claim against him, refused to recuse himself, denied plaintiff's motion to dismiss the support petition, and recommended Koziol be incarcerated for failure to pay child support.  Member Compl. ¶ 79.

These decisions and rulings were well within Getman's judicial capacity, and, despite claiming Getman occupied the "lowest tier of domestic relations processes in the State of New York," plaintiff does not offer a cogent argument that jurisdiction was completely absent. Lead Compl. ¶ 12.  Even assuming Getman exceeded his authority and acted in bad faith or with malice when he recommended incarceration, he is still entitled to immunity.  Further, Getman's refusal to recuse himself was not outside the scope of his judicial capacity.  See Bobrowsky v. Yonkers Courthouse, __ F. Supp. 2d __, No. 10-CV-1846, 2011 WL 1344590, at *15 (S.D.N.Y. Apr. 8, 2011) ("[A] judge's decision to recuse (or not recuse) is also a judicial act . . . .").  Accordingly, Getman is entitled to judicial immunity, and all claims against him will be dismissed.

### e.  **Judge Daley**

Plaintiff maintains that Judge Daley "abused his position as a jurist by directing sheriff deputies to investigate [his] girlfriend."  Member Compl. ¶ 14.  Plaintiff also faults Judge Daley for failing to recuse himself as he had done in previous cases involving plaintiff.

Moreover, Judge Daley issued a "willful violation order," which eventually led to the suspension of plaintiff's law license.  Id. ¶ 91.  Finally, according to Koziol, Judge Daley improperly ordered all proceeds from the sale of plaintiff's house be held in escrow to cover future child support payments.

Again, plaintiff fails to argue that Judge Daley completely lacked jurisdiction over the divorce proceeding.  Although plaintiff suggests Judge Daley, a Supreme Court judge, was acting in a "hybrid capacity" when he presided over a teleconference as "Acting Family Court Judge," he fails to explain how this stripped Judge Daley of jurisdiction.  Lead Compl. ¶¶ 13, 85.  Plaintiff alleges Judge Daley acknowledged confusion about his jurisdiction and capacity to hear the matter.  In the same paragraph, however, plaintiff notes that Judge Daley presided over the hearing as the acting judge assigned to the case by a "designated order" from Judge Lippman.  Id. ¶ 85.  Therefore, it cannot be said that Judge Daley acted in the clear absence of all jurisdiction.

Plaintiff's allegations merely suggest Judge Daley abused his authority, failed to recuse himself, and acted with malice toward plaintiff and his girlfriend.  These actions are not enough to overcome judicial immunity.  Accordingly, all claims against Judge Daley will be dismissed.

### f. **Judge Walsh-Hood**

Judge Walsh-Hood presided over a four-day custody hearing in July 2009.  According to Koziol, she improperly denied his request to address outstanding issues before the proceeding started and moved forward with the hearing despite her lack of familiarity with numerous underlying issues.  Plaintiff alleges that during the hearing she confined him to his trial table, deprived him of his pen, prevented him from presenting complete testimony,

misstated facts, and wrongly ruled in Hawse-Koziol's favor on custody and visitation issues. Also according to Koziol, Judge Walsh-Hood improperly required him to pay transcript fees and issued a restraining order directing him to "stay away" from his ex-wife.  Id. ¶ 98.

Plaintiff points out that Judge Walsh-Hood is a family court judge who was acting as supreme court judge in Koziol's divorce proceeding.  Any suggestion that Judge Walsh-Hood was therefore acting in the complete absence of jurisdiction is unpersuasive as the practice of appointing family court judges to acting supreme court roles is common and constitutionally permissible in New York.  See N.Y. Const. art. VI, § 26(f).  Judge Walsh-Hood was acting within her jurisdiction.

While the hearing before Judge Walsh-Hood was undoubtedly contentious and emotionally-charged,[10] the judge's rulings are shielded from scrutiny by absolute immunity. See Pierson v. Ray, 386 U.S. 547, 554, 87 S. Ct. 1213, 1218 (1967) ("It is a judge's duty to decide all cases within [her] jurisdiction . . . including controversial cases that arouse the most intense feelings in the litigants.  [Her] errors may be corrected on appeal, but [she] should not have to fear that unsatisfied litigants may hound [her] with litigation charging malice or corruption.").  Even assuming Judge Walsh-Hood showed malice toward plaintiff and made procedural errors during the proceeding, she was acting within her jurisdiction and capacity as the assigned judge.  See Stump, 435 U.S. at 359, 98 S. Ct. at 1106 ("A judge is absolutely immune from liability for [her] judicial acts even if [her] exercise of authority is flawed by the commission of grave procedural errors.").  Accordingly, all claims against Judge Walsh-Hood will be dismissed.

_____

[10]  Koziol took issue with "unwarranted, retaliatory and inflammatory remarks" made at the hearing and left the courtroom before the proceeding ended "to avoid a contempt ruling." Lead Compl. ¶ 96.

### g.  Gasparini, Huether, and Crankshaw

The doctrine of quasi-judicial immunity extends absolute immunity to "certain others who perform functions closely associated with the judicial process."  Cleavinger v. Saxner, 474 U.S. 193, 200, 106 S. Ct. 496, 500 (1985).  The Grievance Committee and its members are considered an arm of the judiciary.  See Anonymous v. Ass'n of the Bar of N.Y., 515 F.2d 427, 433 (2d Cir. 1975) (noting that disciplinary proceedings are judicial in nature and holding that the state grievance committee acted "as a quasi-judicial body"); Thaler, 960 F. Supp. at 700 (holding that judicial immunity bars claims against the Grievance Committee and its members).  Therefore Gasparini, Huether, and Crankshaw are entitled to quasi-judicial immunity for actions taken as members of the Grievance Committee.

The Grievance Committee first became involved after Koziol filed a show cause petition with the Fourth Department in January 2008.  The memorandum of law supporting this petition "contained severe criticisms of the domestic relations processes in New York State" as well as criticisms of Eisenhut.  Lead Compl. ¶ 62.  Gasparini authored a report charging Koziol with misconduct for grievances unrelated to this petition and recommended that a "Letter of Admonition" be filed.  Plaintiff argues that Gasparini and Huether made false and misleading statements to the ethics committee during the ensuing disciplinary proceedings. In September 2008 Gasparini and Huether filed additional charges against Koziol related to discrepancies in his responses to past inquiries.  In July 2009 Gasparini and Crankshaw opened a new investigation into plaintiff's unresolved child support delinquencies.[11]

---

[11]  This is the only factual allegation involving Crankshaw, who is not named in the member complaint.

Plaintiff does not argue that the Grievance Committee members acted in complete absence of jurisdiction or without authority to investigate grievances lodged against him. Indeed, attorneys and investigators employed by an ethical grievance committee are expected to investigate reports of misconduct, issue reports, and recommend sanctions. Plaintiff's main complaints are that Gasparini "exceeded her scope by concocting complaints" against him, and Huether "fashioned" the disciplinary process to prevent him from practicing law. Member Compl. ¶¶ 17-18. However, even if Gasparini, Huether, and Crankshaw acted with malice, bad faith, error, or corruption, quasi-judicial immunity is not overcome. Accordingly, all claims against Gasparini, Huether, and Crankshaw will be dismissed.

### C. County Defendants

The County defendants move to dismiss on the grounds that the member complaint fails to state a claim against the County under Monell and the individual defendants are immune from suit. They also argue the abstention doctrine, Younger v. Harris, 401 U.S. 37, 43-45, 91 S. Ct. 746, 750-51 (1971), and the domestic relations exception to federal jurisdiction, Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 12-13, 124 S. Ct. 2301, 2309 (2004), require dismissal of the complaint.

### 1. County of Oneida

The County asserts it is not liable under the theory of respondeat superior for the conduct of individual County employees and that the complaint fails to allege § 1983 liability. Monell, 436 U.S. at 690-91, 98 S. Ct. at 2035-36. Plaintiff contends the County is liable because it relies upon revenues secured through unconstitutional policies and practices.

As explained above, "a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a

respondeat superior theory."  Monell, 436 U.S. at 691, 98 S. Ct. at 2036.  A custom, policy, or practice must be alleged.

The County is not a named defendant in the lead complaint and the only allegations pertaining to it in the member complaint involve the search and seizure at plaintiff's home on October 19, 2010.  The complaint alleges "unknown state, county and town enforcement officers trespassed upon the father's homestead on October 19, 2010 contrary to lawful authority, seizing unspecified personal property under threat of arrest."  Member Compl. ¶ 163.  Further, "[t]he invasion was designed to provoke a criminal act following the father's civil rights filings against the county and town defendants on behalf of former clients which had received publicity weeks earlier."  Id.  The complaint fails to allege any facts constituting a municipal custom, policy, or practice as required in a § 1983 suit against a municipality.  All claims for money damages and prospective relief against the County will be dismissed.  See Humphries, 131 S. Ct. at 450.

### 2.  **Soldato and Chudyk**

Soldato and Chudyk contend they are entitled to judicial immunity because Soldato is an executive employee and Chudyk was functioning in the role of prosecutor when she filed a petition against plaintiff.  In the alternative, they argue for qualified immunity because they were discharging their responsibilities under the child support enforcement system.  Koziol maintains they were not acting with traditional judicial character and are therefore not entitled to judicial immunity.  Further, he disputes the defense of qualified immunity because parenting rights under the Constitution have long been established.  Defendants contend their actions involved child support, not parenting rights, and there is no constitutional right to not financially support one's children.

Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 F. App'x 146 (2d Cir. 2003).  However, even if the constitutional privileges "are so clearly defined that a reasonable public official would know that his actions might violate those rights, qualified . . . immunity might still be available . . . if it was objectively reasonable for the public official to believe that his acts did not violate those rights."  Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991).  In determining whether qualified immunity applies, a court may first consider whether "the facts alleged show the [defendant's] conduct violated a constitutional right."  Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001), modified, Pearson v. Callahan, 555 U.S. 223, __, 129 S. Ct. 808, 818 (2009) ("[W]hile the sequence set forth [in Saucier] is often appropriate, it should no longer be regarded as mandatory.").

The claims against Soldato and Chudyk stem from Judge Grow's June 12, 2008, order regarding plaintiff's child support obligations.  The complaint alleges Soldato exercised enforcement authority over Koziol and his children and Chudyk filed an enforcement petition on behalf of his ex-wife for support violations.  He concludes the petition was "unauthorized, fraudulent and stigmatizing."  Lead Compl. ¶ 82.

During the time in question Soldato was acting as Commissioner of the Oneida County Department of Social Services and Chudyk as County investigator for the child support collection unit.  They are not entitled to judicial immunity because their responsibilities are not closely associated with the judicial process nor is their agency a quasi-judicial body.

However, they are entitled to qualified immunity.  Koziol does not allege any acts by Soldato except that she "directed and participated in enforcement actions over the father and his children resulting in suspension of the father's driving privileges, livelihood and an unlawful seizure of assets."  Member Compl. ¶ 22.  Chudyk filed the petition enforcing Judge Grow's order, which she had authority to do, pursuant to the New York State Family Court Act.  Her conduct in filing and enforcing the petition did not violate any clearly established right.  There is no right to refuse to pay child support.  Moreover, even if there was such a right and it was clearly established, it was objectively reasonable for Soldato and Chudyk to believe that carrying out their duties and enforcing the petition did not violate plaintiff's rights.  Because these defendants are entitled to qualified immunity, claims against them in their individual capacities will be dismissed.

Any claims against Soldato and Chudyk in their official capacities must also be dismissed.  Official capacity suits are merely an alternative way to plead a claim against an entity of which an officer is an employee.  Graham, 473 U.S. at 165, 105 S. Ct. at 3105.  "[A] governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation."  Id. at 166, 105 S. Ct. at 3105 (quoting Polk Cnty. v. Dodson, 454 U.S. 312, 326, 102 S. Ct. 445, 454 (1981)).  In an official capacity suit against a municipal employee, a plaintiff must show that the acts were performed pursuant to a policy or custom.  Patterson v. Cnty. of Oneida, 375 F.3d 206, 226 (2d Cir. 2004).

Here, the suits against Soldato and Chudyk in their official capacities are essentially actions against the County.  Koziol did not allege that they performed any acts pursuant to a policy or custom and therefore the official capacity claims against them will be dismissed.

There is no need to address the remaining arguments based on abstention or the domestic relations exception.

### D. **Attorney Defendants**

Koslosky and Eisenhut each move for summary judgment dismissing plaintiff's causes of action based on §§ 1983, 1985, and 1986 as well as claims for defamation.  Koslosky also moves for summary judgment dismissing the state law legal malpractice claims against him.  All facts and inferences will be viewed in a light most favorable to plaintiff, the nonmovant, as must be done on a motion for summary judgment.  Unless otherwise noted, all material facts are undisputed.

### 1. **Federal Claims under § 1983**

The attorney defendants argue all § 1983 claims must be dismissed because they did not act under color of state law.  Plaintiff contends Koslosky and Eisenhut were not acting as lawyers in a proper judicial proceeding but instead as state actors terminating his father-daughter relationships under color of law.  He notes that both attorney defendants are licensed by New York and Koslosky was appointed by Oneida County Family Court as attorney for his children.  He also contends Eisenhut became a state actor by employing improper tactics beyond the scope of his representation.

To maintain a claim under § 1983, the alleged deprivation must be committed by a person acting under color of state law.  42 U.S.C. § 1983.  "[Section] 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful."  Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50, 119 S. Ct. 977, 985 (1999) (internal quotation omitted).  It is well-settled that attorneys engaged in private practice do not act under color of state law within the meaning of § 1983.  See, e.g., Polk Cnty., 454 U.S. at 318, 102 S. Ct. at 450.

Further, although appointed by the state, an attorney for the children or law guardian is not a state actor because he or she must exercise independent professional judgment on behalf of the clients they represent.  See Elmasri v. England, 111 F. Supp. 2d 212, 221 (E.D.N.Y. 2000) (finding that court appointed legal guardian in custody proceedings was not a state actor, despite her appointment by a New York state court and the fact that she was paid by state funds); Storck v. Suffolk Cnty. Dep't of Soc. Servs., 62 F. Supp. 2d 927, 941-42 (E.D.N.Y. 1999) (noting that guardians ad litem, although appointed by the court, exercise independent professional judgment in the interests of the clients they represent and are therefore not state actors for purposes of § 1983).

It is undisputed that the allegations against Koslosky relate to his actions taken while attorney for plaintiff's children.  Koslosky argues the only state-related conduct alleged is that he filed petitions on behalf of the children including seeking a mental health evaluation of plaintiff, supervised visitation, and to hold Koziol in criminal contempt.  Based on these actions, plaintiff asserts Koslosky participated in the state's institutional processes.  However, his appointment by the Oneida County Family Court and the delegation of duties to him in accordance with that position, without more, does not transform his otherwise private role into that of a state actor.  Under these circumstances, no reasonable jury could find that Koslosky acted under color of state law.  Therefore, he cannot be liable under § 1983.

Likewise, Eisenhut served as a private attorney for plaintiff's ex-wife during the couple's divorce proceedings.  Based upon these undisputed facts, Eisenhut is entitled to judgment as a matter of law that he was not a state actor for purposes of § 1983.

Accordingly, summary judgment as to all federal causes of action under § 1983 against Koslosky and Eisenhut will be granted and those claims dismissed because they did not act under color of state law.

### 2. **Conspiracy Claims under § 1983**

To the extent plaintiff alleges a conspiracy under § 1983 for any of the federal claims, the attorney defendants argue there are no genuine issues of material fact and they are entitled to judgment as a matter of law on these claims.  Koziol maintains the attorney defendants conspired with state actors, specifically judges, to deprive him of his constitutional rights.

A private individual may be subject to § 1983 liability "if he or she willfully collaborated with an official state actor in the deprivation of the federal right."  Dwares v. City of New York, 985 F.2d 94, 98 (2d Cir. 1993).  To succeed on a § 1983 conspiracy claim, a plaintiff must prove:  "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."  Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 324-25 (2d Cir. 2002).  Conclusory allegations that a private person acted in concert with a state actor are insufficient to maintain a conspiracy claim under § 1983.  Id. at 325.

Koziol asserts the attorney defendants were co-conspirators in a scheme to impair his relationships with his children.  The complaint alleges the "defendant State and its agents" and "defendants, acting individually and in concert with one another" deprived plaintiff of his constitutional rights.  Lead Compl. ¶¶ 102, 105, 109.

As to Koslosky, the complaint alleges he "advocated for his own personal and pecuniary interests in a malicious effort to permanently separate the plaintiff children from

their natural father" while acting as attorney for the children.  Id. ¶ 25.  Koziol asserts that in

retaliation for the filing of pleadings in the lead case, Koslosky "surreptitiously and recklessly

sought to damage the father's reputation and childrearing capacities" during a teleconference

with an assigned judge.  Id. ¶ 126.  He contends Koslosky engaged in "limbo petitions" and

"dismissed Family Offense petitions which caused ten months of father-daughter

deprivations and a continuing level of punitive processes designed to keep the father in his

male dominated subservient class of parent."  Koziol Aff., Dkt. No. 96, ¶ 17.  He claims

Koslosky acted at odds with his "clients' best interests" and "personally asserted himself

outside of any rational state appointed position to retaliate for his inclusion as a defendant in

the Lead Case."  Id.  Plaintiff further alleges Koslosky "co-counseled with the state's

presumptively declared 'custodial parent' prior, during and after all disjointed proceedings."

Id.

Viewing the facts in a light most favorable to plaintiff, the nonmovant, he cannot

succeed on a § 1983 conspiracy claim against Koslosky.  A § 1983 conspiracy cannot be

based on acts between Koslosky and plaintiff's ex-wife, both private actors.  Koziol has not

offered any evidence suggesting an agreement or concerted action between Koslosky and

any state actor.  The generalized allegations of complicity in his role as attorney for the

children are not enough to maintain a conspiracy claim against a private individual and

plaintiff has not come forward with specific facts showing there is a genuine issue for trial.

Therefore, all § 1983 conspiracy claims against Koslosky will be dismissed.

As to Eisenhut, the complaint alleges he "exploited unethical and unauthorized means

to transform [Hawse-Koziol] from a natural parent to a custodial agent of the state for

retaliatory and fee generating purposes."  Lead Compl. ¶ 24.  Koziol asserts Eisenhut used

his position to convince Hawse-Koziol that she was entitled to child support payments in excess of the amount agreed upon between the parties and that he further utilized his seat on the Grievance Committee to commit unethical and child damaging practices to extort legal fees.  Plaintiff also alleges Eisenhut conspired with Judges Grow and Merrell in an ex parte conversation prior to oral argument in Supreme Court on a support issue.  He contends Eisenhut unlawfully engaged the Fourth Department and Grievance Committee into the domestic relations process.  The complaint alleges that six days after a show cause petition was filed with the Fourth Department, the Grievance Committee opened an investigation regarding plaintiff's professional background.  Finally, he maintains Eisenhut was protected because of his association with the bench and bar through ex parte interactions with named judges and his appointed presence on the state's bar ethics committee.

As with the claims against Koslosky, plaintiff cannot establish a conspiracy under § 1983 between Eisenhut and Hawse-Koziol, both private actors.  Eisenhut met his burden of showing he is entitled to judgment as a matter of law on these claims because he is not a state actor, and plaintiff has utterly failed to satisfy his burden in response.  Koziol set forth no facts suggesting concerted action between Eisenhut and any state actor to deprive him of his civil rights.  Eisenhut's ex parte conversation with Judges Grow and Merrell, without more, is insufficient to establish his civil liability under § 1983.  There is no evidence that an agreement existed among these three individuals to inflict an unconstitutional injury on Koziol, or that the ex parte conversation was done in furtherance of that goal.  Other than asserting Eisenhut served on the Grievance Committee and implying that he acted improperly, plaintiff has put forth no facts supporting a conspiracy between Eisenhut and the Grievance Committee or the Fourth Department.  Accordingly, Eisenhut is entitled to

summary judgment on all § 1983 conspiracy claims and those claims will be dismissed.  The state law causes of action against these defendants are discussed below.

### 3.  **State Law Defamation Claims**

Both complaints include defamation claims.  The attorney defendants argue they are entitled to summary judgment on these claims because they have absolute immunity for all statements made by them pertinent to the litigation and communicated in the course of judicial proceedings.

The elements of a defamation claim include:  "(1) a false and defamatory statement of fact, (2) regarding plaintiff, (3) the publication of the written or oral statements to a third party, and (4) injury to the plaintiff."  Ives v. Guilford Mills, Inc., 3 F. Supp. 2d 191, 199 (N.D.N.Y. 1998) (Kahn, J.) (citing Weldy v. Piedmont Airlines, Inc., 985 F.2d 57, 61 (2d Cir. 1993)).  A defamation cause of action must identify the statement, when it was made, and to whom it was communicated.  Ives, 3 F. Supp. 2d at 199.

In New York, "'in the context of a legal proceeding, statements by parties and their attorneys are absolutely privileged if, by any view, or under any circumstances, they are pertinent to the litigation.'"  Lipin v. Nat'l Union Fire Ins. Co. of Pittsburgh, 202 F. Supp. 2d 126, 137 (S.D.N.Y. 2002) (quoting O'Brien v. Alexander, 898 F. Supp. 162, 171 (S.D.N.Y. 1995)).  Whether a statement is pertinent is broadly construed and "'embraces anything that may possibly or plausibly be relevant or pertinent, with the barest rationality, divorced from any palpable or pragmatic degree of probability.'"  Lipin, 202 F. Supp. 2d at 137 (quoting O'Brien, 898 F. Supp. at 171).

In the lead case, Koziol asserts the attorney defendants "described and impugned to the plaintiff father a character of an abusive person and parent in a malicious effort to cause

a predetermined outcome in 'custody' proceedings and severe damage to the career interests of the father and his children." Lead Compl. ¶ 128. He contends on July 21, 2009, his ex-wife's mother, Pauline Hawse, testified falsely during a custody hearing that he assaulted his children in 2001. Id. ¶ 129. Following his "extreme reaction" to this testimony, the witness openly recanted her "sworn testimony as the product of statements made to her by the defendant Doe prior to trial." Id. Further, "[a]lthough the testimony was immediately stricken, the defendant attorney conducted himself in a manner which demonstrated his incompetence, prejudice and support of such statements that had never before been alleged." Id. ¶ 130.

It is not clear whether "the defendant attorney" referenced in this cause of action is Koslosky or Eisenhut. Koslosky served as attorney for the children in the underlying custody proceedings and Eisenhut represented Hawse-Koziol in the divorce proceedings. The defamation claim does not actually identify any statements made by either attorney defendant. The only identified allegedly defamatory statements were those made by Hawse-Koziol's mother. These statements were not made or published by Koslosky nor Eisenhut.

Even if plaintiff could prove a defamation claim, the attorney defendants are immune from liability because any statements made by them in the course of judicial proceedings are absolutely privileged if they were pertinent to the litigation. The allegedly defamatory statements were made during a custody hearing and related to plaintiff's competence as a parent. Surely whether he was abusive to his children or previously assaulted them is pertinent to a child custody determination. Because the attorney defendants are immune from liability for the statements made by Pauline Hawse, and because the lead complaint

identifies no other statements, Koslosky and Eisenhut are entitled to summary judgment dismissing this claim.

The defamation cause of action in the member case alleges "[c]ertain named defendants have maliciously and recklessly published false and defamatory statements concerning the plaintiff father to each other and to third parties in the community."  Member Compl. ¶ 173.  Plaintiff has not set forth any facts identifying the statement, when it was made, and to whom it was communicated.  The attorney defendants have shown they are entitled to judgment as a matter of law on this claim and Koziol has not come forward with specific facts to withstand a motion for summary judgment.  Accordingly, all defamation claims against the attorney defendants will be dismissed.

### 4.  State Law Legal Malpractice Claims—Koslosky

Plaintiff asserts a state law legal malpractice claim against Koslosky in both the lead and member complaints.  Koslosky argues he is entitled to summary judgment dismissing these claims because plaintiff lacks standing to assert the claims on behalf of his two infant children.  He further argues that even if Koziol had standing, the claims must be dismissed because the children did not suffer any pecuniary damages.

Section 1201 of the New York Civil Practice Law and Rules governs who may commence and maintain legal proceedings on behalf of infants.  In the absence of a guardian ad litem, a parent having "legal custody" may appear on behalf of an infant.  N.Y. C.P.L.R. § 1201 (McKinney 2011) ("Unless the court appoints a guardian ad litem, an infant shall appear by the guardian of his property or, if there is no such guardian, by a parent having legal custody . . . .").  Koslosky contends Hawse-Koziol is the custodial parent and plaintiff only has visitation rights.  Therefore, he argues, Koziol does not have "legal custody"

within the meaning of Section 1201 and cannot assert a malpractice claim on the children's behalf.  In support of this, he cites a Third Circuit Court of Appeals case noting that "[n]o New York case appears to find legal custody in a divorced parent who does not have a custody order from a court."  Bagot v. Ashcroft, 398 F.3d 252, 263 (3d Cir. 2005).  It need not be determined whether plaintiff, who does not have physical custody of his children, has standing because no reasonable jury could return a verdict for Koziol on the legal malpractice claims.

To succeed on a legal malpractice claim, a plaintiff must show "that the defendant attorney failed to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession which results in actual damages to a plaintiff."  AmBase Corp. v. Davis Polk & Wardwell, 8 N.Y.3d 428, 434 (2007).  "A cause of action for legal malpractice does not afford recovery for any item of damages other than pecuniary loss so there can be no recovery for emotional or psychological injury."  Wolkstein v. Morgenstern, 275 A.D.2d 635, 637 (N.Y. App. Div. 1st Dep't 2000).  However, a plaintiff does not need to show actual damages were sustained and "is required only to allege facts from which actual damages could reasonably be inferred."  Garnett v. Fox, Horan & Camerini, LLP, 82 A.D.3d 435, 436 (N.Y. App. Div. 1st Dep't 2011).

The lead complaint alleges Koslosky failed to "preserve the pre-existing parent-child relationship" and made unsubstantiated allegations "designed to permanently sever the children from their father while simultaneously destroying their infant reputation in the process."  Lead Compl. ¶¶ 125-26.  The member complaint includes almost identical allegations and states "Koslosky continued to demonstrate his malice and child injury by filing a frivolous complaint with defendant Hood in February, 2010 seeking contempt and

incarceration of the father on false pretenses."  Member Compl. ¶ 172.  There are absolutely

no facts that Koziol's children sustained any pecuniary damages.  Instead, he asserts they

suffered emotional distress and pain and suffering which are not recoverable.  Based on the

undisputed facts demonstrating a lack of actual damages, Koslosky is entitled to judgment as

a matter of law dismissing the malpractice claims.

### 5.  Remaining State Law Claims

The attorney defendants have not moved for dismissal of the remaining state law

claims.  Because all federal claims against them will be dismissed, supplemental jurisdiction

over the remaining state law claims will be declined.  See 28 U.S.C. § 1367(c)(3) (2006).

### E.  Other Issues

### 1.  Sebelius

Although Sebelius did not file a timely motion to dismiss, the claims against her must be

dismissed on two separate grounds.

Initially, it is not clear that plaintiff brings a claim under Bivens v. Six Unknown Named

Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S. Ct. 1999 (1971).  Nonetheless,

even liberally construing the complaints to find a Bivens claim against Sebelius, such claim

fails as plaintiff cannot establish her personal involvement.  Indeed, "[b]ecause the doctrine

of respondeat superior does not apply in Bivens actions, a plaintiff must allege that the

individual defendant was personally involved in the constitutional violation."  Thomas v.

Ashcroft, 470 F.3d 491, 496 (2d Cir. 2006); see also Tavarez v. Reno, 54 F.3d 109, 110 (2d

Cir. 1995) ("[F]ederal courts typically analogize claims under § 1983 with Bivens actions.").

The only allegation against Sebelius is that "she has charge over the administration and

enforcement of Title IV-D of the Social Security Act."  Lead Compl. ¶ 18; Member Compl.

¶ 19.  This is insufficient to establish personal involvement.  Plaintiff fails to allege any actions taken by Sebelius, much less how her actions violated his constitutional rights. Instead, he seeks to hold Sebelius liable under the doctrine of respondeat superior which, as noted above, he cannot do.

Sebelius is also entitled to statutory immunity to the extent plaintiff seeks to hold her liable for the enforcement of Title IV-D provisions.  See 42 U.S.C. § 652(k)(3) (2006) ("The Secretary . . . shall not be liable to an individual for any action with respect to a certification by a State agency under this section.").  Accordingly, all claims against Sebelius will be dismissed.

### 2.  Hawse-Koziol

No motions have been made on behalf of Hawse-Koziol.  To the extent plaintiff asserts § 1983 claims against her, these claims must be dismissed because she is not a state actor. There are insufficient allegations that she conspired with state actors and thus the complaint fails to tie her to a § 1983 conspiracy.  Finally, because all federal claims against her will be dismissed, supplemental jurisdiction over the remaining state law causes of action will be declined.  See 28 U.S.C. § 1367(c)(3).

### 3.  Costello, Kiehle, and Kerr

Costello and Kiehle have not appeared and no motions have been made on their behalf.  As discussed above, a motion to dismiss was made on behalf of Kerr based on lack of personal involvement.  The only facts pertaining to these defendants are in the member complaint.  That complaint alleges Kerr and Costello "directed and participated in an unlawful seizure of assets from the father's homestead on October 19, 2010."  Member Compl. ¶¶ 28-

29.  Additionally, "Charlotte Kiehle and unknown enforcement agents . . . are persons who invaded plaintiffs' homestead October 19, 2010.  As relevant to this Complaint, they acted in violation of their own warrant, levy, and operative court order, all in further retaliation for the father's exercise of protected constitutional rights."  Id. ¶ 31.  The only causes of action implicating these defendants are a claim for search and seizure in violation of the Fourth Amendment and a state law trespass claim.  Both stem from the October 19, 2010, seizure at Koziol's home.

The Fourth Amendment, applicable to New York by way of the Fourteenth Amendment, protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  The only allegation of wrongdoing by these defendants is that they went to the wrong address "in further violation of the August, 2010 order of Supreme Court Judge Daley" and "completed the trespass and seizure in a manner designed to provoke additional outrage, arrest without cause, and remote residential relocation."  Member Compl. ¶ 109.  Plaintiff has not provided any factual allegations that could support a plausible claim under the Fourth Amendment.  There are no facts describing what the defendants did to "provoke additional outrage, arrest without cause, [or] remote residential relocation."  Id.  These allegations do nothing more than infer "the mere possibility of misconduct" and are insufficient to survive a motion to dismiss.  See Iqbal, 129 S. Ct. at 1950.

Accordingly, the Fourth Amendment cause of action will be dismissed.  Because the federal claims against Costello, Kiehle, and Kerr will be dismissed, supplemental jurisdiction over the remaining state law trespass claim will be declined.  See 28 U.S.C. § 1367(c)(3).

### 4. **Remaining State Law Claims**

To the extent any state law claims remain against any defendants, supplemental jurisdiction will be declined pursuant to 28 U.S.C. § 1367(c)(3) and any such claims will be dismissed without prejudice.

### 5. **Plaintiff's Cross-Motions**

Given the resolution of defendants' motions, plaintiff's cross-motions are denied as moot.

## V. **CONCLUSION**

Koziol's federal constitutional claims against New Hartford and the County fail because there are no allegations of and no factual support for the existence of a municipal custom, policy, or practice.  Plaintiff's conspiracy claim under § 1985 will be dismissed because he is not a member of a class covered by that section.  Consequently, his § 1986 claim will also be dismissed.  Koziol's state law trespass claim will be dismissed because he failed to meet the statutory prerequisite of filing a notice of claim.

New York, UCS, Third Department, Fourth Department, and Grievance Committee are entitled to Eleventh Amendment immunity, and all claims against them will be dismissed.  All claims for monetary damages against the individual State defendants in their official capacities will also be dismissed.  The judicial defendants are entitled to judicial immunity, and all claims against them for monetary and injunctive relief will be dismissed.  Swarts, King, and Sebelius will be dismissed for lack of personal involvement.

Soldato and Chudyk are entitled to qualified immunity and all claims against them in their individual capacities will be dismissed.  Further, all claims in their official capacities will

be dismissed because Koziol failed to allege that they performed any acts pursuant to a policy or custom.

Plaintiff's federal constitutional claims against Koslosky and Eisenhut fail because they are not state actors and there are no facts suggesting they conspired with state actors.  The attorney defendants are entitled to summary judgment on the state law defamation claims because plaintiff failed to present evidence establishing that either attorney actually made the allegedly defamatory statements.  Further, the attorney defendants have immunity for statements made in the course of judicial proceedings.  Koziol's state law legal malpractice claim against Koslosky will also be dismissed because no facts were adduced that his children suffered any pecuniary damages.

Plaintiff's ex-wife, Hawse-Koziol, is not a state actor and did not conspire with state actors so she cannot be held liable under § 1983.  Koziol's Fourth Amendment search and seizure claim against Costello, Kiehle, and Kerr also fails because he did not allege sufficient facts to survive a motion to dismiss.

Finally, jurisdiction over all remaining state law claims will be declined.

Accordingly, it is

ORDERED that

1.  All of the defendants' motions to dismiss are GRANTED;

2.  All of the defendants' motions for summary judgment are GRANTED;

3.  All claims pursuant to 42 U.S.C. §§ 1983, 1985, 1986 are DISMISSED;

4.  The state law trespass claim against the Town of New Hartford is DISMISSED;

5.  The state law defamation claims against William Koslosky and Keith Eisenhut are DISMISSED;

6.  The state law legal malpractice claims against William Koslosky are DISMISSED;

7.  Any remaining state law claims are DISMISSED without prejudice;

8.  All of plaintiff's cross-motions are DENIED; and

9.  The lead and member complaints are DISMISSED in their entirety.

The Clerk of the Court is directed to enter judgment accordingly.

IT IS SO ORDERED.

_____
United States District Judge

Dated:   May 24, 2011
         Utica, New York.